No. 23-10837

# In the United States Court of Appeals
## for the Fifth Circuit

ETHAN MCROREY; KAYLEE FLORES; GUN OWNERS OF AMERICA, INCORPORATED; GUN OWNERS FOUNDATION,

*Plaintiffs-Appellants*,

v.

MERRICK GARLAND, U.S. ATTORNEY GENERAL; FEDERAL BUREAU OF INVESTIGATION,

*Defendants-Appellees*.

**Appeal from the United States District Court for the Northern District of Texas**
**United States District Court Judge Reed O'Connor, Civ. No. 7:23-cv-00047-O**

## PETITION FOR REHEARING *EN BANC* FOR PLAINTIFFS-APPELLANTS

Robert J. Olson
WILLIAM J. OLSON, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
(703) 356-5070
rob@wjopc.com

Stephen D. Stamboulieh
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us

Oliver M. Krawczyk
AMBLER LAW OFFICES, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com

*Attorneys for Appellants Ethan McRorey, Kaylee Flores, Gun Owners of America, Incorporated and Gun Owners Foundation*

No. 23-10837

# In the United States Court of Appeals
## for the Fifth Circuit

ETHAN MCROREY; KAYLEE FLORES; GUN OWNERS OF AMERICA, INCORPORATED; GUN OWNERS FOUNDATION,

*Plaintiffs-Appellants*,

v.

MERRICK GARLAND, U.S. ATTORNEY GENERAL; FEDERAL BUREAU OF INVESTIGATION,

*Defendants-Appellees*.

**Appeal from the United States District Court for the Northern District of Texas United States District Court Judge Reed O'Connor, Civ. No. 7:23-cv-00047-O**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiffs-Appellants:**

Ethan McRorey; Kaylee Flores; Gun Owners of America, Inc.*; Gun Owners Foundation*

**Counsel for Plaintiffs-Appellants:**

Robert J. Olson, William J. Olson, PC; Stephen D. Stamboulieh, Stamboulieh Law, PLLC; David G. Browne, Spiro & Browne, PLC; Brandon W. Barnett, Barnett Howard & Williams, PLLC; Oliver M. Krawczyk, Ambler Law Offices, LLC

**Defendants-Appellees:**

Governmental parties are exempt from 5th Cir. R. 28.2.1.

**Counsel for Defendants-Appellees:**

Taisa M. Goodnature, Courtney L. Dixon, Steven H. Hazel, Brian M. Boynton, Michael S. Raab, U.S. Department of Justice, Civil Division; Chad E. Meacham, U.S. Attorney for the Northern District of Texas, U.S. Department of Justice

\* Pursuant to Fed. R. App. P. 26.1(a) and 5th Cir. R. 28.2.1, Gun Owners of America, Inc. and Gun Owners Foundation are non-stock, nonprofit corporations with no parent companies. Therefore, no publicly held company owns 10% or more of their stock.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

## INTRODUCTION AND RULE 35(b)(1) STATEMENT

This Court's en banc review of the panel opinion is warranted for several reasons.  First, upholding "enhanced" background checks for firearm purchases by young adults, the panel gave short shrift to the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), elevating inapposite dicta found *in a footnote* over the Court's express holding that robust analysis of the historical tradition "**must**" be conducted and is the "**only**" way to justify a law that regulates Second Amendment rights.

Second, rather than examining the historical tradition as required by *Bruen*, the panel opined that the *Bruen* framework applies only to laws that regulate literal "keeping" or literal "bearing" of arms, while restrictions on so-called "ancillary" Second Amendment activities like acquisition – even though necessary to "keep and bear" – need not be supported by historical tradition.  Accordingly, consideration by the full Court is necessary to maintain fidelity to the Supreme Court's decisions.

Third, after rejecting *Bruen*'s historical framework, the panel returned to precisely the sort of "judge-empowering 'interest-balancing inquiry'" that *Bruen* repudiated.  Citing with approval one of this Court's

defunct pre-*Bruen* decisions that employed the abrogated "two-step framework," the panel used virtually the same language and applied virtually the same form of scrutiny. Thus, the panel speculated that some laws may go *too far* and restrict firearm acquisition *too much* that they impermissibly burden the Second Amendment *too greatly* – and that judges will decide when this invisible line is crossed.

Fourth, the panel's bifurcated Second Amendment framework invites absurd results. For example, a restriction imposed on a person who *already possesses* ("keeps") a firearm would be evaluated under *Bruen*'s stringent historical framework, while a restriction on the very same person *wishing to acquire* (seeking to "keep") the very same firearm would escape *Bruen* analysis, to be evaluated under the panel's burdensomeness analysis.

Fifth, the panel's aberrant decision splits with numerous other circuits – including the Third, Fourth, Seventh, and Ninth – which uniformly hold that the right to *acquire* a firearm is part and parcel to keeping and bearing it. Also, the panel's *Bruen*-minimizing burdensomeness analysis conflicts with other circuits which have held that *Bruen*'s historical framework is *the only way* to analyze Second

Amendment challenges. This case therefore presents questions of exceptional importance warranting rehearing.

Sixth, the panel's decision conflicts with prior decisions of this Court, undermining the holdings and methodology of prior panels, and making this Court's review warranted to maintain uniformity.

Any one of these problems with the panel's opinion would warrant this Court's en banc review. Together, they make review vital.

**TABLE OF CONTENTS**

ISSUES MERITING *EN BANC* CONSIDERATION............................1

STATEMENT OF FACTS............................................................…..............1

    I.    District Court Ruling.....................................................1

    II.    Panel Opinion.........................................…..………....2

ARGUMENT.......................................................................3

    I.    THE PANEL CREATED A NEW TEST UNTETHERED
        FROM *HELLER* AND *BRUEN*........................................3

        A. The Panel Elevated Dicta Over Express Holdings...........3

        B. The Panel Applied a Hyper-Literal Reading to Greatly
           Constrain *Bruen*......................................................6

    II.    REJECTING *BRUEN'*S HISTORICAL FRAMEWORK, THE
        PANEL RETURNED TO JUDGE-EMPOWERING
        INTEREST-BALANCING...............................................8

    III.    THE PANEL OPINION INVITES ABSURD RESULTS.....11

    IV.    THE PANEL CREATED (AND DEEPENED EXISTING)
        CIRCUIT SPLITS.......................................................13

        A. The Panel Created a Circuit Split on Acquisition...........13

        B. The Panel Opinion Conflicts with This Court's Prior
           Opinions..................................................................15

CONCLUSION....................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Bezet v. United States*, 714 F. App'x 336 (5th Cir. 2017)................. 3, 8, 9

*Bonvillian Marine Serv. v. Pellegrin*, 19 F.4th 787 (5th Cir. 2021) ....... 16

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................... passim

*Drummond v. Robinson Township*, 9 F.4th 217 (3d Cir. 2021) ............. 15

*Ezell v. City of Chicago*, 651 F.3d 684  (7th Cir. 2011)........................... 15

*Hollis v. Lynch*, 827 F.3d 43 (5th Cir. 2016).............................................. 4

*Jackson v. City and County of San Francisco*, 746 F.3d 953  (9th Cir. 2014) ..................................................................................................... 9

*Luis v. United States*, 578 U.S. 5 (2016) ................................................... 7

*Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023) ..... 4, 14, 15

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) .......... passim

*Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014) ......... 9, 10

*Range v. Att'y Gen. U.S.*, 69 F.4th 96 (3d Cir. 2023) ....................... 12, 13

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) ............... 14

*United States v. Bullock*, 679 F.Supp.3d 501 (S.D. Miss. 2023)............. 12

*United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) .......................... 16

*United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012)........................ 10

*United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024).......................... 12

*United States v. Hicks*, 649 F.Supp.3d 357 (W.D. Tex. 2023) ............ 7, 15

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ..................... 13

*United States v. Porter*, 2024 U.S. Dist. LEXIS 89703 (W.D. La. May 16, 2024) ....................................................................................................... 12

*United States v. Quiroz*, 629 F.Supp.3d 511 (W.D. Tex. 2022) ........ 12, 15

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023).................... 15, 16

*Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023)............................... 15

**Statutes**

18 U.S.C. § 922(g)(1)........................................................................... 12, 13

18 U.S.C. § 922(t)(1)(C) ............................................................................. 1

34 U.S.C. § 40901(*l*)................................................................................... 1

**Other Authorities**

A. Scalia & B. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> (2012) .......................................................................................................... 7

## ISSUES MERITING *EN BANC* CONSIDERATION

1. Whether the acquisition of firearms is "covered" by the "plain text" of the Second Amendment.

2. Whether the panel erred by affirming the district court's denial of a preliminary injunction.

## STATEMENT OF FACTS

The 2022 "Bipartisan Safer Communities Act" amended federal background-check provisions[1] to impose an automatic, indefinite waiting period on all 18-to-20-year-old adults who seek to purchase firearms through licensed dealers. Plaintiffs challenged this age-based discrimination, raising claims under the Second and Fifth Amendments, and moved for preliminary injunctive relief under the Second Amendment only.

## I.    District Court Ruling.

On August 14, 2023, the district court denied preliminary relief on the likelihood-of-success prong, despite acknowledging Defendants' failure to prove a historical tradition under *Bruen*'s historical test. ROA.301. Rather, the district court concluded that background checks

---

[1] 18 U.S.C. § 922(t)(1)(C); 34 U.S.C. § 40901(*l*) (the "Challenged Provisions").

1

designed to keep prohibited persons from obtaining firearms are "presumptively lawful," and thus do not require analysis under the *Bruen* framework. Plaintiffs timely appealed. ROA.304.

## II.  Panel Opinion.

On April 26, 2024, a panel of this Court affirmed, inferring from dicta in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *Bruen* a presumption of constitutionality for all forms of background checks. The panel concluded that Plaintiffs had failed to rebut this presumption – and consequently had no likelihood of success – despite copious historical-tradition briefing demonstrating that the Founding generation never would have approved of lengthy delays in acquiring firearms. At no point did the panel engage with the historical tradition, leaving unexplained how Plaintiffs ever could rebut the "presumption" the panel had applied.

The panel found that the Second Amendment's "plain text" protects "keeping" and "bearing," but not the necessary predicate act of acquiring firearms. Rather, according to the panel, the Second Amendment is implicated only when a restriction amounts to a "functional prohibition[] on keeping," *i.e.*, a complete ban. Op.10. Accordingly, rather than using *Bruen*'s historical framework, the panel instead applied a type of

"substantial[] burden" interest-balancing analysis that was previously employed in *Bezet v. United States*, 714 F. App'x 336, 341 (5th Cir. 2017), but which *Bruen* expressly rejected.  Without explanation, the panel decided that a "10-business-day wait" to exercise a constitutional right is not "abusive."  Op.12.

## ARGUMENT

## I.    THE PANEL CREATED A NEW TEST UNTETHERED FROM *HELLER* AND *BRUEN*.

### A. The Panel Elevated Dicta Over Express Holdings.

At the outset, the panel asked "[w]hat part of *Bruen* controls" this case.  Op.2.  It viewed its choice as between (i) *Bruen*'s historical methodology (the "only" framework that "must" be applied in all Second Amendment challenges),[2] or (ii) dicta from *Bruen*'s footnote nine[3] observing how laws not under review "appear" to operate.  The panel chose "the latter" (Op.2), elevating ambiguous dicta from footnote nine[4]

---

[2] *Bruen*, 597 U.S. at 17 ("government must demonstrate"); *id.* at 24 ("government must then justify"); *id.* at 17 ("Only if a firearm regulation is consistent...."); *id.* at 24 ("Only then may a court conclude....").

[3] *Bruen*, 597 U.S. at 38 n.9.

[4] A Fourth Circuit panel read footnote nine quite differently: "it would be poor judicial practice to 'read a footnote' … to 'establish the general rule'.... *Bruen* was not shy about telling lower courts how to handle Second Amendment challenges: We turn to the Amendment's 'text,' 'informed by history'.... [I]f we have to choose between the outcome dictated by text, history, and tradition and the outcome hinted at in dicta, it is no contest: Text, history, and tradition wins every time."  *Md. Shall Issue, Inc. v.*

above the Court's repeated and express holdings, and replacing *Bruen*'s historical framework with a "burdensomeness" test found nowhere in any Supreme Court opinion.

The panel posited that "*Bruen* and *Heller* make clear that background checks preceding firearm sales are presumptively constitutional." Op.6; *see also* Op.7 (citing *Heller*'s asides about "longstanding … conditions and qualifications on the commercial sale of arms" and "presumptively lawful regulatory measures," along with *Bruen*'s statement that the Court was not ruling on the constitutionality of *other* states' licensing regimes not at issue). From this, the panel concluded that background checks might violate the Second Amendment, but only if "put toward abusive ends" or imposing "lengthy wait times." Op.9 (citing *Bruen*, 597 U.S. at 38 n.9).[5]

Importantly, *Bruen*'s footnote nine discussed background checks for *carry* permits – not the "enhanced background checks" for *acquisition*,

---

*Moore*, 86 F.4th 1038, 1045 n.9 (4th Cir. 2023), *vacated, reh'g granted*, 2024 U.S. App. LEXIS 766 (4th Cir. Jan. 11, 2024).

[5] Justifying reliance on *Bruen*'s dicta, the panel cited *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016), for the proposition that courts "are generally bound by Supreme Court dicta...." Op.9. But the panel omitted what *Hollis* stated next: "because these passages are dicta," "it is *appropriate to undertake an independent* [*Second Amendment*] *inquiry*...." 827 F.3d at 448 (emphasis added).

which did not even exist when *Bruen* was decided.  Certainly, neither *Heller* (which never mentioned background checks) nor *Bruen* "approved" "background checks" as "presumptively constitutional."  Certainly, *Bruen*'s refusal to "suggest the *unconstitutionality*" of laws not at issue – which "often" employ either "a background check or … a safety course" – is not the same as a finding of *constitutionality*.  *Bruen*, 597 U.S. at 38 n.9 (emphasis added).  In fact, the panel's cited reference to the *constitutionality* of background checks was not in the opinion of the Court, but only in a concurrence by two Justices.  Op.8 (citing *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring)).

But even assuming the Challenged Provisions are "presumptively," not "conclusively," constitutional, the government failed to demonstrate their constitutionality according to historical tradition.  Rather, as the district court found, *there is no Founding-era tradition* supporting "enhanced" background checks for young adults.  ROA.300.  In other words, had *Bruen*'s methodology been followed, Plaintiffs would have prevailed.  Yet rather than evaluate the historical record compiled before it, the panel boiled down *Bruen*'s dozens of pages of historical analysis to just "one passage" that Plaintiffs purportedly "read out of context,"

concluding that mandatory application of *Bruen*'s framework to Second Amendment cases is not "a fair reading." Op.6.

## B. The Panel Applied a Hyper-Literal Reading to Greatly Constrain *Bruen.*

Beginning with the proposition that *Heller* and *Bruen* broadly declared all manner of background checks to be "presumptively constitutional," the panel found confirmation of *Bruen*'s purportedly limited scope in its statement that a historical inquiry is required "'[w]hen the Second Amendment's *plain text* covers an individual's conduct.'" Op.9 (citing *Bruen*, 597 U.S. at 24). And because, according to the panel, "on its face 'keep and bear' does not include purchase," the *Bruen* historical framework was utterly inapplicable. Op.9.

On the contrary, this hyper-literal approach diverges from true textualism and decisions in other circuits[6] which conclude that acquisition of firearms is part and parcel of keeping or bearing them, and

---

[6] The panel's approach to "keep and bear" also diverges from *Heller*, which explained that the right "to bear arms *implies something more* than the mere keeping; it implies the learning to handle and use them...." *Heller*, 554 U.S. at 617-18 (emphasis added). This approach also diverges from *Bruen*, which repeatedly declined to limit the historical test to verbatim "plain-text" prohibitions, instead referencing "*firearm regulation*[*s*]" generally. *Bruen*, 597 U.S. at 17-67 (emphasis added). Yet under the panel's holding, gun laws that are *obviously* "firearm regulations" do not receive *Bruen* analysis unless they eviscerate the right entirely.

that _all_ Second Amendment challenges require the _Bruen_ methodology. _See_ IV(A), _infra_.   And that is hardly surprising.   As Justice Scalia explained, "[t]extualism, in its purest form, begins and ends with what the text says _and fairly implies_."[7]   Justice Thomas similarly noted that "[t]he law has long recognized that the '[a]uthorization of an act also authorizes a necessary predicate act.'"   _Luis v. United States_, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment) (emphasis added) (cleaned up) ("[c]onstitutional rights thus _implicitly protect those closely related acts necessary_ to their exercise … and unavoidably connected with a right.…").   Indeed, as one district court within this Circuit explained:

> if buying (receiving) a gun is not covered by the Second Amendment's plain text, neither would selling one. So according to the Government, Congress could throttle gun ownership without implicating Second Amendment scrutiny by just banning the buying and selling of firearms. What a marvelous, Second Amendment loophole! [_United States v. Hicks_, 649 F.Supp.3d 357, 360 (W.D. Tex. 2023).]

This Court's en banc review is warranted to clarify that the plain text includes acquisition, a necessary prerequisite to "keep[ing]."

---

[7] A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts at 16 (2012) (emphasis added).

7

## II. REJECTING *BRUEN*'S HISTORICAL FRAMEWORK, THE PANEL RETURNED TO JUDGE-EMPOWERING INTEREST-BALANCING.

Rather than applying *Bruen*'s historical framework to resolve this case, the panel reverted to precisely the sort of "judge-empowering 'interest-balancing inquiry'" that *Bruen* (and *Heller*) expressly prohibit. Thus, the panel replaced the Court's textual subject-matter qualifier with a *burdensomeness filter*, surmising that only firearm regulations "so burdensome that they act as *de facto* prohibitions" on keeping or bearing are subject to *Bruen*'s "rigorous historical requirement."  Op.11 n.18; *see also* Op.13 ("there is some point at which a background check becomes so lengthy that it is … subject to *Bruen*'s historical framework as a *de facto* prohibition on possession").  Under the panel's opinion, judicial determination of when this invisible line is crossed constitutes a "judge-empowering" judgment call.

The panel's opinion bears no resemblance to the Supreme Court's approach in *Bruen*, but instead has all the hallmarks of this Court's pre-*Bruen* interest-balancing approach in *Bezet*.  *See* Op.11 ("not at all lengthy"), Op.11 ("weaker end of that spectrum"), Op.11 n.18 ("so burdensome that they act as *de facto* prohibitions on acquisition"), Op.11

("little risk of … lengthiness"), Op.12 ("some amount of time … is permissible"), Op.13 ("there is some point at which a background check becomes so lengthy that it is 'put towards abusive ends' … [b]ut a period of 10 days does not qualify"). *Cf. Bezet*, 714 F. App'x at 341 ("they do not substantially burden a core Second Amendment right"); *id.* ("these relatively light burdens"); *id.* at 340 ("less severe regulations on more peripheral rights"). Thus, the panel opined that some laws may go *too far* and restrict firearm acquisition *too much* that they impermissibly burden the Second Amendment *too greatly* – but a waiting "period of 10 days" to exercise an enumerated constitutional right is not "abusive." Op.13.[8]

But this "analyz[ing] … 'the severity of the law's burden on th[e] right'" is exactly what interest-balancing courts did "[a]t the second step" of the "two-step" framework that *Bruen* repudiated. *See Bruen*, 597 U.S. at 18. Often, these courts advanced the notion that only laws which *destroy* the right are infringements "requiring *Heller*-style per se invalidation." *Peruta v. County of San Diego*, 742 F.3d 1144, 1170 (9th

---

[8] Under the panel's opinion, mandatory 3-to-10-business-day delays would be "presumptively" constitutional not only for 18-to-20-year-olds, but *for everyone*. And if that is not abusive, then why not 120 days – the time which Nevada has to issue a concealed-carry permit? *See Bruen*, 597 U.S. at 13 n.1 (collecting Nevada law).

Cir. 2014); *see also Jackson v. City and County of San Francisco*, 746 F.3d 953, 957 (9th Cir. 2014) ("San Francisco's … regulations … limit but do not destroy…."); *United States v. DeCastro*, 682 F.3d 160, 164 (2d Cir. 2012) (applying "heightened scrutiny … to those regulations that substantially burden the Second Amendment," but not to laws that "only minimally affect[] the ability to acquire a firearm").

But the panel's opinion did not merely return to pre-*Bruen* interest-balancing – rather, it watered down even that two-step test. While interest-balancing decisions allowed challengers of purportedly "minimal" burdens at least a theoretical chance of success under some laxer scrutiny, the panel's holding flatly sanctions all but the most odious "functional," "abusive," "*de facto*," and outright "prohibitions." Op.10, 13. And even then, such "prohibitions" enjoy watered-down protection compared to pre-*Bruen* cases, as the panel opinion would subject even an outright "prohibition" (*i.e.*, that which 'destroys' the right) only to "historical analysis," Op.10, and not even the "*Heller*-style per se invalidation" of old. *Peruta*, 742 F.3d at 1170. It is highly unlikely that the Supreme Court intended *Bruen* to provide *lesser* protection than the

"judge-empowering 'interest-balancing'" which existed previously. But that is precisely the regime the panel's opinion creates.

## III.   THE PANEL OPINION INVITES ABSURD RESULTS.

The panel's conclusion that "'keep and bear' does not include purchase" is startling. Op.9. Indeed, addressing the "apparent tension" caused by *Bruen*'s application of the "historical test to 'sensitive place' restrictions," the panel claimed that "sensitive-place laws are likely captured by the plain text" because "*they directly impact the right to bear*." Op.10 (emphasis added). But it is difficult to imagine a more direct "impact" on the right to *keep* (and subsequently *bear*) an arm than restricting the predicate act of *acquiring* the arm. Even the panel admitted that "[t]he right to 'keep and bear' can implicate the right to purchase." Op.10. Indeed, if Plaintiffs are barred from purchasing an arm for 10 business days, their ability to "keep" during that period is not just "impacted" or "implicated" – it is destroyed. In other words, the Challenged Provisions' waiting period constitutes a 10-business-day ban on possession.

Plaintiffs are not the first to recognize the untenable consequences of the panel's narrow, hyper-literal reading. As one court within this

Circuit recently observed in the context of receiving (*i.e.*, *acquiring*) a firearm, "logically, excluding 'receive' makes little sense.  To receive something means 'to take into … one's *possession*.  How can one possess … something without first receiving it?  Receipt is the condition precedent to possession – the latter is impossible without the former. … The Second Amendment's plain text does cover 'receipt' and the Constitution presumptively protects such conduct.'"  *United States v. Quiroz*, 629 F.Supp.3d 511, 516-17 (W.D. Tex. 2022), *appeal pending*, No. 22-50834 (5th Cir.).[9]

Moreover, the panel's conclusion leads to absurd results.  For example, a challenge by a person who *already possesses* ("keeps") a firearm[10] would be "covered by the plain text" (Op.10), and the government would bear the burden to justify it historically.[11]  At the same time, a virtually identical challenge by the same person wishing to

---

[9] Indeed, "if receiving a firearm were illegal, but possessing or carrying one remained a constitutional right, one would first need to break the law to exercise that right.  The Government is asking in effect to banish gun rights to Hotel California's purgatory: 'You can check out any time you like, but you can never leave.'"  *Id.* at 516.

[10] *See, e.g.*, *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024) (traffic stop; § 922(g)(1) unconstitutional as applied to a nonviolent felon).

[11] *See, e.g.*, *United States v. Bullock*, 679 F.Supp.3d 501, 526 (S.D. Miss. 2023), *appeal pending*, No. 23-60408 (5th Cir.); *United States v. Porter*, 2024 U.S. Dist. LEXIS 89703, at *8 (W.D. La. May 16, 2024).  These cases came to different conclusions on § 922(g)(1) – but only after applying the *Bruen* framework.

*acquire* the same firearm (to "keep")[12] would not fall within the Second Amendment's "plain text," and thus would trigger only the panel's burdensomeness analysis.  The strength of Second Amendment rights thus would hinge on whether someone already owned the firearm – and young adults like Plaintiffs, who have only recently come of age, would be disproportionately affected.  That cannot possibly be the law, and this Court's review is necessary to set the record straight.

## IV.  THE PANEL CREATED (AND DEEPENED EXISTING) CIRCUIT SPLITS.

### A. The Panel Created a Circuit Split on Acquisition.

By deciding that "on its face 'keep and bear' does not include purchase – let alone without background check," Op.9, the panel departed from at least four other circuits who have taken the position that keeping presupposes acquiring.  In *Range*, the Third Circuit held that a challenge to Section 922(g)(1) presented an "easy question" under the text: "Range tried to buy a firearm but was rejected.... '[T]he Second Amendment's plain text covers [Range's] conduct,' and 'the Constitution

---

[12] *See, e.g.*, *Range v. Att'y Gen. U.S.*, 69 F.4th 96 (3d Cir. 2023) (civil suit; § 922(g)(1) unconstitutional as applied to a nonviolent misdemeanant).

presumptively protects that conduct.'" 69 F.4th at 98, 103.[13]  Likewise, in *Md. Shall Issue*, a Fourth Circuit panel observed that the challenged law:

> only restrict[ed] Plaintiffs' ability to 'purchase, rent, or receive' [handguns].  How, then, does the law regulate the right to keep and bear arms?  The answer is not complicated. If you do not *already* own a handgun, then the only way to 'keep' or 'bear' one is to get one.... Accordingly, Maryland's law regulates conduct that falls within the Second Amendment's plain text.  [86 F.4th at 1043, 1045 (citation omitted).]

And in stark contrast to the panel opinion here, the fact that the "challenged law d[id] not *permanently* prohibit Plaintiffs from acquiring" firearms did not change the Fourth Circuit's textual analysis.  *Id.* at 1043.  Rather, "[n]othing in the Amendment's text or *Bruen* says that it protects only against laws that *permanently* deprive people of the ability to keep and bear arms."  *Id.* at 1044; *see also id.* n.8 ("Second Amendment scrutiny is not exclusively reserved for laws that wholly or effectively prohibit firearm possession.").

The Ninth Circuit similarly held, prior to *Bruen*, that the "Second Amendment right to keep and bear arms for self-defense 'wouldn't mean

---

[13] *See United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) ("If there were somehow a categorical exception for these restrictions … there would be no constitutional defect in prohibiting the commercial sale of firearms.  Such a result would be untenable under *Heller*.").

much' without the ability to acquire arms." *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). And the Seventh Circuit held that the "right to possess firearms for protection implies a corresponding right to acquire...." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *accord Drummond v. Robinson Township*, 9 F.4th 217, 227 (3d Cir. 2021) (emphasis added) ("This 'implies a corresponding *right to acquire* and maintain proficiency' with common weapons."). The panel's opinion conflicts with all these decisions, warranting this Court's full review.

## B. The Panel Opinion Conflicts with This Court's Prior Opinions.

The panel's decision also conflicts with the approach taken by this Court in other Second Amendment cases.[14] First, in *Rahimi*, this Court explained that *Bruen* "did not rule on the constitutionality of 43 specific state licensing regimes because that was not the issue before the Court." *United States v. Rahimi*, 61 F.4th 443, 451 n.5 (5th Cir. 2023). Yet here, the panel found oppositely that "*Bruen* and *Heller* made clear that background checks preceding firearm sales are presumptively

---

[14] The panel's opinion implicitly overrules the conclusions of district courts within this Circuit in *Hicks* and *Quiroz* (*supra*). *See* 649 F.Supp.3d 357; 629 F.Supp.3d 511.

constitutional,"[15] Op.6, thus conflicting with the "well-settled … rule of orderliness that one panel … may not overturn another panel's decision...." *Bonvillian Marine Serv. v. Pellegrin*, 19 F.4th 787, 792 (5th Cir. 2021). If this panel's new law on presumptive constitutionality is to stand, the proper forum to overrule *Rahimi*'s prior panel would be this Court sitting *en banc*.

Second, in an opinion written by the author of the panel opinion here, this Court stated broadly that "**firearms regulations are unconstitutional unless** they are firmly rooted in our nation's history and tradition of gun regulation," thereby acknowledging *Bruen*'s test reaches beyond only "plain-text" restrictions. *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023) (emphasis added); *see also id.* at 357 n.5 (Higginson, J., concurring) ("courts first determine whether the challenged regulation or statute implicates the Second Amendment and then, if so, analyze the relevant history and tradition"). *Cf.* Op.10 ("[t]he

---

[15] The panel thus joined the reasoning in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023), that *Bruen*'s footnote nine decided the constitutionality of gun laws not at issue. *See* Op.8 n.12; *see also* Op.8 ("*Bruen*'s footnote 9 plainly forecloses plaintiffs' contention."). But that reasoning splits with (at least) the Fourth Circuit in *Md. Shall Issue*, which held that footnote nine was "simply clarifying" and that it was "an invitation for courts to examine these laws against the historical record at step two[.]" 86 F.4th at 1045 n.9.

right to 'keep and bear' can implicate the right to purchase … but such an implication is not the same thing as being covered by the plain text"). Because the panel's opinion conflicts with and undermines this Court's prior decisions, the Court's en banc review is warranted to maintain Circuit consistency.

## CONCLUSION

As it stands, this Circuit now endorses two divergent approaches to Second Amendment challenges – one being *Bruen*'s methodology, and another which grants judges the latitude to exempt many laws from historical scrutiny. This Court's full consideration is necessary to prevent the latter approach from taking hold.

Respectfully submitted,

*/s/ Stephen D. Stamboulieh*

Robert J. Olson                         Stephen D. Stamboulieh
WILLIAM J. OLSON, PC          STAMBOULIEH LAW, PLLC
370 Maple Ave. West, Suite 4     P.O. Box 428
Vienna, VA 22180-5615            Olive Branch, MS 38654
(703) 356-5070                        (601) 852-3440
rob@wjopc.com                       stephen@sdslaw.us

Oliver M. Krawczyk
AMBLER LAW OFFICES, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com         *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed the foregoing Petition for Rehearing *En Banc* for Plaintiffs-Appellants with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Dated: June 10, 2024

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this brief contains 3,895 words, excluding the parts exempted by Fed. R. App. P. 32(f), as modified by 5th Cir. R. 35.5.

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5), Fed. R. App. P. 32(a)(6), and 5th Cir. R. 32.1 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

Dated: June 10, 2024

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
*Counsel for Plaintiffs-Appellants*